# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SHELBY SELLS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 06CV0077 (RJL)** |
| | ) | |
| **EXECUTIVE OFFICE FOR UNITED** | ) | |
| **STATES ATTORNEYS, ET. AL,** | ) | |
| | ) | |
| **Defendants** | ) | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT DEA'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Drug Enforcement Agency ("DEA"), Criminal Division of U.S. DOJ ("Criminal Division"), Bureau of Alcohol, Tobacco and Firearms ("ATF"), Federal Bureau of Prisons ("BOP"), Internal Revenue Service ("IRS"), Federal Bureau of Investigation ("FBI"), and U.S. Marshals Service ("USMS"), by and through their undersigned attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully move for summary judgment in their favor in this case brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act ("PA"), 5 U.S.C. § 552a. Summary judgment is sought on the grounds that there are no material facts in dispute and the facts establish that Defendants are entitled to judgment as a matter of law. A statement of material facts as to which there is no genuine dispute, a memorandum of points and authorities in support of this motion, the declarations of the responsible agency officials, with attachments consistent with the District of Columbia Circuit's opinion in Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974), and a proposed Order are filed herewith. In addition, and for the grounds stated in its motion for summary judgment, Defendant DEA simultaneously opposes Plaintiff's

motion for partial summary judgment on the issue of exhaustion.[1]

Plaintiff should take notice that any factual assertions contained in the documents in support of this motion will be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the documents.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992); Local Rule 7(h); and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Dated:   April 6, 2006                    Respectfully submitted,

                                          /s/_____
                                          KENNETH L. WAINSTEIN
                                          D.C. Bar # 451058
                                          United States Attorney


                                          /s/_____
                                          RUDOLPH CONTRERAS
                                          D.C. Bar # 434122
                                          Assistant United States Attorney

---

[1]  Defendant Executive Office for United States Attorneys ("EOUSA") is not included in this omnibus motion for summary judgment as on April 5, 2006, it filed a second motion for an extension of time to answer or otherwise respond to Plaintiff's Complaint until May 22, 2006.

_/s/_ _____

HEATHER R. PHILLIPS
C.A. Bar # 19620
Assistant United States Attorney
Civil Division
555 4th Street, N.W., Rm E4212
Washington, DC 20530
(202) 514-7139

## CERTIFICATE OF SERVICE

I certify that on April 6, 2006, a copy of the foregoing motion, as well as a supporting memorandum, a statement of material facts, and a supporting declarations (with exhibits) were served by regular United States mail, postage pre-paid, upon Shelby Sells, No. 04134-063, Federal Correctional Complex, Box 3000 (MEDIUM), Forrest City, Arkansas 72336

_/s/_____
Heather R. Phillips

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHELBY SELLS,               )
                                        )
          **Plaintiff,**        )
    **v.**                      )     **Civil Action No. 06CV0077 (RJL)**
                                          )
**EXECUTIVE OFFICE FOR UNITED**  )
**STATES ATTORNEYS, ET. AL,**    )
                                        )
         **Defendants**      )
_____)

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## NOT IN GENUINE DISPUTE

In accordance with Local Rule 7(h), Defendants: (1) USMS, (2) DEA, (3) Criminal Division, (4) ATF, (5) BOP, (6) IRS, and (7) FBI, submit this statement of material facts as to which there is no genuine dispute.

## THE USMS

**1.**    The USMS's declaration was prepared by William E. Bordley, Associate General Counsel and the Freedom of Information/Privacy Act (FOI/PA) Officer of the USMS, assigned to the Headquarters of the Office of General Counsel (OGC), in Arlington, Virginia.  <u>See</u> Declaration of William E. Bordley ("Bordley Declaration") ¶1, attached hereto as Exhibit 1.

**2.**    Mr. Bordley is experienced with the procedures for responding to requests made pursuant to the Freedom of Information Act (FOIA),  5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. § 552a, for information maintained in the records and files of the USMS.  <u>Id.</u>

**3.**    The USMS Headquarters Office of General Counsel is responsible for processing all FOIA/PA requests made to any USMS office located throughout the United States pursuant to USMS policy.  <u>Id.</u>  Mr. Bordley's declaration adequately explains the search undertaken by the

USMS, the application of Exemption 7(C) to certain of the responsive documents, and the justifications for the 7(C) exemption on the withheld material.  Mr. Bordley thoroughly sets forth where the USMS withheld information in its release to Plaintiff and why the information was withheld.  Mr. Bordley's declaration and <u>Vaughn</u> Index therefore provide the Court with the requisite basis for review of the USMS's actions in response to Plaintiff's FOIA request.

**4.**     On April 30, 2005, Plaintiff sent a FOIA/PA request to the USMS requesting a copy of all Oklahoma USMS records pertaining to him.  <u>See</u> Exhibit A to Bordley Declaration.  The USMS acknowledged receipt of Plaintiff's request by letter dated May 11, 2005, advising Plaintiff that a search for responsive documents had commenced.  <u>See</u> Exhibit B to Bordley Declaration.  By letter dated July 23, 2005, Plaintiff appealed to the Office of Information and Privacy ("OIP") the USMS's non-response (as of that date) to his FOIA/PA request.  Bordley Declaration ¶ 6.  OIP acknowledged Plaintiff's appeal on August 15, 2005.  <u>See</u> Exhibit C to Bordley Declaration.

**5.**     In the meantime, a search for records pertaining to Plaintiff was conducted in the USMS district offices for the locations identified in Plaintiff's request: the Northern District of Oklahoma, the Eastern District of Oklahoma, and the Western District of Oklahoma.  Bordley Declaration ¶ 4.  To aid in the search, these offices were provided with Plaintiff's date and place of birth, social security number, and prisoner number, all of which information was furnished by Plaintiff.  <u>Id.</u>  The USMS searched in all locations that could reasonably be expected to contain responsive documents, those being the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007, systems of records.  Bordley Declaration ¶¶ 4-5.

**6.**    As a result of the USMS's search, one hundred and forty-two (142) pages of records

pertaining to Plaintiff were located by the USMS office in the Eastern District of Oklahoma in

the PPM/PTS, JUSTICE/USM-005 and WIN, JUSTICE/USM-007 systems of records.  Bordley

Declaration ¶ 5.  Records maintained in these systems are compiled for law enforcement

purposes in connection with the USMS receipt, processing, transportation and custody of

prisoners, the execution of Federal arrest warrants, and the investigation of fugitive matters.  Id;

see Rule 4, Fed. R. Cr. Procedure, 18 U.S.C. § 4086, 28 U.S.C. § 566, and 28 C.F.R. § 0.111(a),

(j), (k), (q).  As such, these systems of records are exempt from the access provisions of the

Privacy Act pursuant to 5 U.S.C. 552a(j)(2).  Bordley Declaration ¶ 5; see 28 C.F.R. §

16.101(a),(q).  Therefore, to ensure maximum access, Plaintiff's records were processed for

disclosure pursuant to the FOIA, 5 U.S.C. § 552.  Bordley Declaration ¶ 5.

**7.**    By letter dated November 10, 2005, the USMS provided a response to Plaintiff's request

based on its search.  See Exhibit D to Bordley Declaration.  The USMS informed Plaintiff in this

response that after conducting the search of its files, one-hundred and forty-two (142) pages of

documents had been located which were responsive to his request.  Bordley Declaration ¶ 7.  Of

the one-hundred and forty-two (142) pages, seventy-five (75) pages originated with or had

information that originated with other agencies.  Bordley Declaration ¶ 7.  In particular, three (3)

pages were referred to the Bureau of Prisons, sixteen pages (16) were referred to the Bureau of

Alcohol, Tobacco, Firearms, and Explosives, forty-four pages (44) were referred to the

Executive Office for U.S. Attorneys, and twelve (12) pages were referred to the Federal Bureau

of Investigation.  Id.  The USMS disclosed the remaining sixty-seven (67) pages of documents

(that is, those documents that originated with USMS) to Plaintiff on November 10, 2005 and

made a supplemental disclosure of twelve (12) pages that originated or contained information originating from the FBI, after consultation with the FBI on February 8, 2006.  Id.  Of the seventy-nine (79) responsive documents released, sixty-five (65) pages were released entirely, while fourteen (14) pages were released with information excised and withheld pursuant to Exemption 7(C).  Id.; see also Exhibit D to Bordley Declaration.

8.      On November 29, 2005, OIP received a letter from Plaintiff dated November 16, 2005 appealing the USMS's action in response to his request.  Bordley Declaration ¶ 8.  OIP acknowledged Plaintiff's appeal on December 6, 2005.  See Exhibit E to Bordley Declaration.

9.      In sum, USMS located 67 pages of responsive records in its files that originated with the USMS.  Bordley Declaration ¶ 7.  The remainder of the 142 pages – 75 pages in total – of responsive documents found in USMS files had originated with, or had information that originated with other agencies.  Bordley Declaration ¶ 7.  Those 75 pages were therefore referred to the originating agencies for their assessment respecting disclosure.  Bordley Declaration ¶ 7.  With respect to the 12 pages that originated or had information originating with the FBI, the USMS consulted with the FBI, which then authorized the supplemental disclosure of those 12 pages.  Bordley Declaration ¶ 7.  Consequently, a total of 79 pages were released by the USMS to Plaintiff.  Bordley Declaration ¶ 7.  Of those 79 pages, sixty-five (65) pages were released entirely, while fourteen (14) pages were released with information excised and withheld pursuant to Exemption 7(C).  Bordley Declaration ¶ 7.

10.      Specifically, the excisions made pursuant to Exemption 7(C) consisted of the names of USMS employees, the telephone number of a USMS employee, the names and other information of prisoners (other than Plaintiff), the names and information of third-party individuals, the

names of government employees, handwritten information pertaining to another prisoner, and the names of law-enforcement officers.  Bordley Declaration ¶ 13.

## THE DEA

**11.**    The DEA's declaration was prepared by William C. Little, a DEA attorney assigned to the DEA's Office of Chief Counsel, Administrative Law Section.  See Declaration of William C. Little ("Little Declaration") ¶ 2, attached hereto as Exhibit 2.  Within the DEA Office of Chief Counsel, Mr. Little's primary responsibilities are matters involving the Freedom of Information Act (FOIA), 5 U.S.C.§ 552 and Privacy Act (PA), 5 U.S.C. § 552a, litigation in which DEA is an interested party.  Id. ¶ 3.  Mr. Little has served in this capacity since about April 26, 1999.  Id.  In addition, between April 26, 1999, and November 18, 2003, Mr. Little served as the DEA Privacy Officer.  Id.  Mr. Little is familiar with the DEA policies practices and procedures regarding the administration of, and processing and release of information requested under the FOIA and PA, and DEA PA Systems and Records.  Id.  ¶ 5.

**12.**    In preparing his declaration, Mr. Little read and became familiar with the Complaint in the above entitled action.  Id.  ¶ 9. Also, as relates to the Plaintiff's FOIA Complaint, Mr. Little personally conducted a litigation review of the contents of the files and records maintained by the DEA Freedom of Information Operations Unit (SARO).  Id.  As such, Mr. Little's declaration provides the Court with the requisite basis for review of the DEA's actions in response to Plaintiff's FOIA request.

**13.**    By letter dated April 30, 2005, Plaintiff  requested "a copy of any and all documents, records and information that any part of your agency has or had in its possession that is in any way connected to, related to, or even remotely reference to my name" and for which he provided

particulars that included "[a]ll criminal investigatory and forfeiture records compiled in the State

of Oklahoma."  See Little Declaration ¶ 12, and attached Exhibit A.  By letter dated June 23,

2005, the DEA acknowledged receipt of Plaintiff's request and informed him that it would be

processed in order of receipt.  Little Declaration ¶ 13, and attached Exhibit B.

14.     Plaintiff appealed the DEA's failure to respond to his request to the Department of

Justice, Office of Information and Privacy (OIP).  By letter dated letter dated July 5, 2006, OIP

acknowledged the receipt of Plaintiff's appeal and informed him that DEA was still processing

his request.  Little Declaration ¶ 15, and attached Exhibit D.  Plaintiff was also informed that the

FOIA authorized him to treat the failure to respond within the specified time limits as a denial.

Id.

15.     Plaintiff's April 30, 2005 request was interpreted as a request for information contained

in DEA criminal investigative files.  Little Declaration ¶ 16.  The acknowledging and

commencement of the processing of Plaintiff's request was delayed by the installation of

software and hardware associated with the SARO case assignment, tracking and processing

system.  Id.  Since five of the six Headquarters investigatory case files were stored in long term

storage, additional delays occurred.  Id.  At the time the DEA received Plaintiff's Complaint, the

Headquarters investigatory files were obtained, responsive information was identified and copied

and the material was being reviewed by SARO personnel.  Id. ¶ 17.

16.     Upon conducting a litigation review, it was noted that, in addition to information that was

maintained in DEA Headquarters files, Plaintiff had specifically requested information that was

maintained in field files and forfeiture files.  Id. ¶ 18.  Given the number of files and their

location, Plaintiff should have been informed of the fee associated with the processing of his

request and deficiencies in the identification of the forfeiture records that he was requesting.

2. Id.  With regard to asset forfeiture records, DEA was unable, based upon the information that Plaintiff provided, to identify any records that Plaintiff may have been requesting.  Id.  ¶ 19.  To retrieve asset forfeiture records, a description of the asset with the date and place of the seizure, or the DEA asset forfeiture number is required.  Id.  Since Plaintiff failed to provided any of the required information, it is impossible to search for or retrieve responsive records.  Id.

17.    A total of six 6 investigative case files maintained in IRFS were identified as having information that mentions Plaintiff or in which he was identified as the subject or defendant.  Id. ¶ 20.  These investigative case files date back to about 1985.  Id.  Since the estimated fee to conduct the requested FOIA search exceeds $250.00, the Department of Justice Rules, contained in 28 C.F.R. § 16.11 (i)(2), provide that requesters without a history of payment of fees will make an advance payment.  Id. ¶ 21.

18.    By letter dated March 30, 2006, Plaintiff was informed of the estimated fee of $784.00, and that additional information was necessary to identify and locate asset forfeiture records.  Id. ¶ 22, and attached Exhibit Little E.

19.    The DEA is currently awaiting Plaintiff's response to the fee request before continuing with the processing of Plaintiff's FOIA request.  Id.  Plaintiff has been given 45 days to respond to the fee request or to reformulate his request.  Id. ¶ 23.  Upon receipt of payment, DEA will initiate further processing of the Plaintiff's request.  Id. ¶ 24.

## THE CRIMINAL DIVISION

20.    The Criminal Division's declaration was prepared by Kathy Hsu, an attorney in the Criminal Division assigned to the Office of Enforcement Operations.  See Declaration of Kathy

Hsu ("Hsu Declaration") ¶ 1, attached hereto as Exhibit 3. Ms. Hsu is currently assigned to the Criminal Division's Freedom of Information Act/Privacy Act Unit (FOIA/PA Unit). <u>Id.</u> In such capacity, Ms. Hsu's duties are, *inter alia*, to review complaints in lawsuits filed under both the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq*., and the Privacy Act (PA), 5 U.S.C. § 552a *et seq*., and to provide litigation support and assistance to Assistant United States Attorneys and to Department trial attorneys litigating these cases in District Court. <u>Id.</u> ¶ 2.

21.    In conjunction with these duties, Ms. Hsu reviews processing files that have been compiled by the paralegal processors and reviewed by supervisory paralegals and/or by the FOIA/PA Unit Chief in responding to FOIA/PA requests received by the Unit. <u>Id.</u> Ms. Hsu also consults with the Unit Chief, who supervises the Unit's processing of FOIA and PA requests, and with the supervisory paralegals to confirm that determinations to withhold or to release records of the Criminal Division have been made in accordance with the provisions of both the FOIA and the PA, and with Department of Justice regulations - 28 C.F.R. § 16.1 *et seq.* <u>Id.</u> Ms. Hsu's declaration is based on information acquired through the performance of her official duties. <u>Id.</u> ¶ 3. In short, Ms. Hsu's declaration provides the Court with the requisite basis for review of the Criminal Division's actions in response to Plaintiff's FOIA request.

22.    By letter dated April 30, 2005, Plaintiff made a request to the Criminal Division's FOIA/PA Unit for records concerning himself. <u>See</u> Hsu Declaration and attached Exhibit 1. On May 24, 2005, the Criminal Division acknowledged receipt of Plaintiff's request and advised him that the request had not been received in proper form and before further action could be taken in processing his request additional information would be required from him. Hsu Declaration ¶ 5. Specifically, Plaintiff was advised that the FOIA/PA Unit was unable to search

for the records requested because he had not furnished a "Privacy Act Identification and Request Form," and had not indicated on the "Criminal Division's List of Systems of Records Form" which systems of records maintained by the Criminal Division he wanted searched.  Id. Additionally, Plaintiff was notified that his request had been assigned case number CRM-200500513P, however, request CRM-200500513P would be closed, and when the Criminal Division received the attached forms in completed form, the request would then be reopened under a different case number.  Id.  Plaintiff was also notified in the letter of his administrative appeal rights should he treat the letter as a denial of his request.  Id. and attached Exhibit 2.

23.    By letter dated June 9, 2005, Plaintiff returned the "Privacy Act Identification and Request Form" and the "Criminal Division's Privacy Act Systems of Records Form."  He indicated on the forms the systems of records he wanted searched and provided information about himself that would assist the Criminal Division in those searches.  See Hsu Declaration ¶ 6, and attached Exhibits 3-4.

24.    On June 28, 2005, the Criminal Division acknowledged that it had received Plaintiff's "Privacy Act Identification and Request Form" dated June 9, 2005, and the list of systems of records Plaintiff wanted searched.  Plaintiff's FOIA/PA request was reassigned case number CRM-200500653P.  Plaintiff was further advised that the FOIA/PA Unit would conduct a search to determine what records the Criminal Division had that were within the scope of the request. Hsu Declaration ¶ 7, and attached Exhibit 5.

25.    On August 30, 2005, the FOIA/PA Unit advised Plaintiff that it had completed its search for relevant Criminal Division records in his name and had located no records responsive to his request.  Hsu Declaration ¶9, and attached Exhibit 7.  Plaintiff appealed the Criminal Division's

response.

## **THE ATF**

**26.**     The ATF's declaration was prepared by Averill P. Graham, Chief of the Disclosure

Division for ATF.  Declaration of Averill P. Graham ("Graham Declaration") ¶ 1, attached

hereto as Exhibit 4.  As Chief of the Disclosure Division, Mr. Graham reviews all requests

referred to ATF from other agencies that have located ATF-originated documents in their

records while processing their FOIA and PA requests.  Id.  He is responsible for processing all

FOIA and PA requests, initiating searches relevant to such requests, supervising the

determination of what records should be disclosed, processing all documents referred to ATF

and to other agencies, and recording all administrative appeals filed with ATF.  Id.

**27.**     Mr. Graham is familiar with the procedures followed by ATF in responding to Plaintiff's

FOIA request.  Graham Declaration ¶ 3.  Therefore, Mr. Graham's declaration and Vaughn

Index provide the Court with the requisite basis for review of the ATF's actions in response to

Plaintiff's FOIA request.

**28.**     On May 19, 2005, ATF's Disclosure Division received a letter from Plaintiff dated April

30, 2005, requesting "all criminal investigatory and forfeiture records compiled in the State of

Oklahoma" regarding himself.  Graham Declaration ¶ 4, and attached Exhibit A.  ATF

acknowledged receipt of Plaintiff's letter, and advised Plaintiff that his request was being

processed.  Graham Declaration ¶¶ 4-6, and attached Exhibits B, C.

**29.**     Upon receipt of Plaintiff's FOIA request the Disclosure Division executed an

independent and thorough search for all responsive materials.  Graham Declaration ¶ 37.  The

-10-

first step that was taken in conducting the search was to query the Treasury Enforcement

Communications System (TECS).  Id.  TECS is a text-based database, owned by the Bureau of

Customs and Border Protection, Department of Homeland Security, which contains information

that may be of interest to law enforcement agencies.  Graham Declaration ¶ 38.  TECS is a

computerized information system designed to identify individuals and businesses suspected of or

involved in violation of federal law.  Id.  TECS is also a communications system permitting

message transmittal between Federal law enforcement offices and other international, state, and

local law enforcement agencies.  Id.  TECS provides access to the FBI's National Crime

Information Center (NCIC) and the National Law Enforcement Telecommunication Systems

(NLETS) with the capability of communicating directly with state and local enforcement

agencies.  Id.  ATF uses TECS to locate records within the Department of Justice's Privacy Act

system of records entitled "Criminal Investigation Report System."  Id.

**30.**     ATF records located within TECS include: wanted persons and fugitives; known and

suspected violators of laws falling within the jurisdiction of ATF; felons and dishonorably

discharged veterans who have requested relief to own firearms and/or explosives under the Gun

Control Act of 1968; violent felons; and gangs and terrorists.  Graham Declaration ¶ 39.  The

TECS system contains seven record subsections: People, Businesses, Aircraft, Firearms,

Vehicles, Vessels, and Things.  Id.  Bureau-wide, ATF performs an average of 130,000 queries

per month against records in the following subsections: People, Businesses, Firearms, and

Vehicles.  Id.  These queries reveal ATF Investigation numbers that correspond to a specific

field division where any files would be located.  Id.  Accordingly, because the TECS database

contains the names of the individuals ATF has investigated; it was the place most likely to locate

responsive records.  Id.

31.    By searching under Plaintiff's full name, all records related to Plaintiff were determined

to be located in the Dallas ATF Field Division and retrievable under Criminal Investigation

Number 745209 97 0008.  Graham Declaration ¶ 40.  This is the only ATF file associated with

Plaintiff in the TECS database.  Id.  Pursuant to a request from the Disclosure Division, ATF's

Dallas Field Division undertook a search that located all criminal case files within their office

that were retrievable by the Plaintiff's full name and Criminal Investigation Number 745209 97

0008.  Id.

32.    Mr. Graham was informed by the Dallas Field Division that he had been provided with

all records responsive to Mr. Sells' request.  Graham Declaration ¶ 41.  As such, and for the

reasons described above, ATF has conducted a search of all locations likely to contain

responsive documents using methods reasonably expected to uncover all relevant documents.  Id.

33.    On September 8, 2005, ATF granted Plaintiff's FOIA request in part.  Graham

Declaration ¶ 9, and attached Exhibit F.  Specifically, ATF released some records in full, and

redacted and withheld some records pursuant to FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(D),

and (b)(7)(E).  Id.  Plaintiff appealed ATF's response to his FOIA request.

34.    By memorandum dated November 10, 2005, the United States Marshals Service (USMS)

informed ATF that in the course of processing a FOIA request from Mr. Sells 16 documents

originating from ATF were located.  Graham Declaration ¶ 11.  These documents were provided

to ATF for processing and direct response to Mr. Sells.  Id. and attached Exhibit K.

35.    On or around, November 22, 2005, the Disclosure Division sent Mr. Sells eight pages

referred to ATF by USMS for processing and direct response.  Graham Declaration ¶ 12 and

attached Exhibit I. The Disclosure Division redacted and withheld some records pursuant to

FOIA Exemption (b) (7) (C). Id. The remaining pages USMS referred to ATF were duplicative

of documents previously provided to Mr. Sells by the Disclosure Division on September 8, 2005.

Id. Additionally, the Disclosure Division provided Mr. Sells with instructions on how to make

an administrative appeal. Id. Plaintiff appealed the USMS disclosures. Id.

36.    Upon receipt of the instant Complaint, ATF conducted an extensive review of Plaintiff's

file, and determined that in the two instances where Exemption (b)(7)(E) had been invoked, such

information could now be released. Graham Declaration ¶ 14. As such, on March 16, 2006,

ATF re-released two pages (consisting of pages 1 and 4, see attached Vaughn index) in full, no

longer utilizing FOIA Exemption (b)(7)(E). Id. and attached Exhibit K.

### THE BOP

37.    The BOP's declaration was prepared by Karen Summers, a paralegal specialist for the

BOP at the South Central Regional Office in Dallas, Texas. See Declaration of Karen Summers

("Summers Declaration") ¶ 1, attached hereto as Exhibit 5. Ms. Summers' official

responsibilities include reviewing and researching inmate civil legal matters, and she has access

to BOP records, including an inmate's medical and central file, investigative records, and the

BOP's SENTRY computer database. Id. ¶ 2.

38.    Ms. Summer is familiar with the policies and procedures for processing FOIA/PA

requests, and reviewed the relevant BOP records respecting Plaintiff. Id. ¶ 3. Ms. Summer's

declaration adequately explains the search undertaken by the BOP, the application of

Exemptions 7(C) and 7(F) to certain of the responsive documents, and the justifications for these

exemptions on the withheld material. Id.

39.     Ms. Summer thoroughly sets forth where the BOP withheld information in its release to Plaintiff and why the information was withheld. See generally Summers Declaration. Thus, Ms. Summer's declaration and Vaughn Index provide the Court with the requisite basis for review of the BOP's actions in response to Plaintiff's FOIA request.

40.     Plaintiff's FOIA request (given BOP number 2005-05146) was forwarded to the BOP's South Central Regional Office (SCRO) for response. Summers Declaration ¶ 4, and attached Exhibit 1. Plaintiff sought copies of Inmate Systems Management (ISM) records, the FOIA Exempt section of his Central File, and investigatory records of the SIS/SIA from the FCC Forrest City, the Federal Transfer Center in Oklahoma City and the Federal Correctional Institution in El Reno, Oklahoma. Id. The request was interpreted as a request for all records pertaining to Plaintiff that were maintained in his Central and Medical Files, SIS records and copies from the FOIA Exempt section of his Central File at his designated institution, Forrest City. Id. All records relating to an inmate are maintained by his or her institution. Id.

41.     By letter dated May 19, 2005, Plaintiff's request was accepted and acknowledged as received by the SCRO. Plaintiff was advised that he could request a review and/or copies of the releasable records (non "FOI Exempt") from his Central and Medical Files at the local (institution) level. Ordinarily, most records (i.e., ISM, education, etc.) are routinely forwarded to an inmate's unit team for incorporation into his/her Central File. Summers Declaration ¶ 5, and attached Exhibit 2.

42.     On June 2, 2005, BOP staff provided Plaintiff the opportunity to review and/or receive

copies of his Central File records.[2]  Summers Declaration ¶ 7. Plaintiff signed a receipt indicating he was provided access to his Central File but did not request any copies.  Summers Declaration ¶ 7, and attached Exhibit 4.  By letter dated May 24, 2005, Plaintiff was informed twenty nine (29) responsive documents, maintained in the "FOI Exempt" section of his Central File, were reviewed for release determination.  Summers Declaration ¶ 9, and attached Exhibit 6. Plaintiff appealed the BOP's determinations.  Summers Declaration ¶¶ 14-16.

**43.**　A review of the thirty nine (29) records revealed two (2) pages were released in full; nine (9) pages were released with certain information excised pursuant to Title 5 U.S.C. §§ 552a(b)(2), (b)(5), (b)(7)(C) and/or (b)(7)(F); and eighteen (18) pages were withheld in their entirety pursuant to Title 5 U.S.C. §§ 552a(b)(2), (b)(7)(C), and (b)(7)(F).  Summers Declaration ¶ 10, and attached Exhibit Summers-6.

**44.**　The twenty nine (29) documents, compiled for law enforcement purposes, were either excised in part or withheld in their entirety because they either related solely to the internal procedures and practices of the agency or they contained information regarding the privacy of third parties or inmates whom staff determined separation concerns existed and release of the information could jeopardize their safety and institution security.  Summers Declaration ¶ 11.

**45.**　As noted above, Plaintiff was informed he could seek review and copies of all releasable documents maintained in his Central and Medical Files.  Summers Declaration ¶ 17.  BOP staff were instructed to search Plaintiff's files to determine any and all records that were not releasable at the institution level and forward them to the BOP's SCRO for review and release

---

[2]  Inmates may submit a Request to Staff Member at their designated institution to request a review or copies of their Central and Medical Files .

determination.  Id.  Plaintiff was provided, in part, a copy of those records either in full or in an excised version pursuant to applicable exemptions under the FOIA/PA Acts.  Id.

46.    Plaintiff appealed the BOP's release determination of his FOIA Request No. 2005-05146. Plaintiff complained the BOP has "blanket denied" release of all records, released certain records and withheld some by claiming certain exemptions, and withheld certain records without stating a reason for the deletions or exemptions.  Summers Declaration ¶ 14, and attached Exhibit 7.

### THE IRS

47.    The IRS's declarations respecting Plaintiff's FOIA requests were prepared by Appeals Officers Heidi Peterson and Theresa Carillo.  See Declarations of Heidi Peterson and Theresa Carillo ("Peterson Declaration and Carillo Declaration"), attached hereto as Exhibits 6A and 6B. The IRS's declaration respecting the search for responsive records was prepared by Karen A. Hines, the Disclosure Manager of the IRS's Disclosure Office 10, located in St. Louis, Missouri. See Declaration of Karen A. Hines ("Hines Declaration"), attached hereto as Exhibit 6C.  Ms. Hines has been a Disclosure Officer Manager since November of 1986, and took over as the Disclosure Officer for Oklahoma in September of 2004.  Hines Declaration ¶ 1.  Consequently, the IRS's declarations provide the Court with the requisite basis for review of the IRS's actions in response to Plaintiff's FOIA request.

48.    Upon receiving Plaintiff's Complaint, the IRS conducted a search to determine whether it had received a FOIA request or FOIA appeal from Plaintiff.  Two separate searches were conducted, first by Ms. Peterson, Appeals Officer for the IRS's Riverside California Appeals Office, and then by Appeals Officer Teresa Carrillo.  See generally Peterson Declaration and Carrillo Declaration.  Ms. Peterson was unable to locate any FOIA request made by Plaintiff.

Peterson Declaration ¶ 8. Ms. Carillo determined that, although the IRS received a letter from Plaintiff entitled "FOIA Appeal," no actual FOIA request had ever been received from Plaintiff. Carillo Declaration ¶ 4. As such, a letter was sent to Plaintiff informing him that his appeal did not meet the minimum requirements of IRS regulations. Carillo Declaration ¶ 6.

49.    As a result of the instant litigation, the IRS became apprised of Plaintiff's FOIA request, and on March 6, 2006, conducted a search for responsive records. Hines Declaration ¶ 2. A search of the IRS's Internal Data Retrieval System (IDRS) was undertaken for information pertaining to Plaintiff. Hines Declaration ¶ 4. The search revealed no criminal investigation pertaining to Plaintiff. Id. ¶ 5. With respect to Plaintiff's personal income tax records, information for tax years 1980, 1984-91, 1993, 1994, 2001, 2002, and 2003 was found. Id. ¶¶ 7, 9. That information has now been disclosed to Plaintiff. Hines Declaration ¶¶ 14, 15, and attached Exhibit 1 ("Information to be disclosed to Plaintiff") .

## THE FBI

50.    The FBI's declaration was prepared by David M. Hardy, who has been the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. since August 1, 2002. See Declaration of David M. Hardy ("Hardy Declaration") ¶ 1, attached hereto as Exhibit 7. In his official capacity as Section Chief of RIDS, Mr. Hardy supervises approximately 257 employees who staff a total of ten Units and a field operational service center unit whose collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures;

judicial decisions and other Presidential and Congressional directives.  Id. ¶ 2.

**51.**    Mr. Hardy's responsibilities also include the review of FBI information for classification

purposes as mandated by Executive Order 12958, as amended, and the preparation of

affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.  Id.  Mr.

Hardy has been designated by the Attorney General of the United States as an original

classification authority and a declassification authority pursuant to Executive Order 12958, as

amended, §§ 1.3 and 3.1.  Id.  The statements contained in Mr. Hardy's declaration are based

upon his personal knowledge, upon information provided to him in his official capacity, and

upon conclusions and determinations reached and made in accordance therewith.  Id.

**52.**    Due to the nature of Mr. Hardy's official duties, he is familiar with the procedures

followed by the FBI in responding to requests for information from its files pursuant to the

provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act of 1974, 5 U.S.C. § 552a.  Id. ¶ 3.

Specifically, he is aware of the treatment which has been afforded the FOIA/Privacy Act

("FOIPA") request of Plaintiff, Shelby Wayne Sells, which seeks access to records pertaining to

himself.  Id.  Therefore, Mr. Hardy's declaration provides the Court with the requisite basis for

review of the FBI's actions in response to Plaintiff's FOIA request.

**53.**    By letter dated April 30, 2005, Plaintiff submitted a FOIA/PA request to FBIHQ

seeking access to all documents, records and information concerning himself.  Hardy Declaration

¶ 5 and attached Exhibit A.  By second letter dated April 30, 2005, Plaintiff submitted a

FOIA/PA request to the Oklahoma City field office seeking access to all documents, records and

information concerning himself.  Id.  ¶ 6 and attached Exhibit B.

**54.**    By letter dated May 17, 2005, FBIHQ acknowledged receipt of the Plaintiff's FOIPA

request forwarded from the Oklahoma City Field Office.  Plaintiff was also advised that his request had been assigned FOIPA number 1020657.  Id.  ¶ 7 and attached Exhibit C.

55.     By letter dated May 25, 2005, FBIHQ acknowledged receipt of the Plaintiff's FOIPA request to FBIHQ.  Id.  ¶ 8 and attached Exhibit D.  Plaintiff was also advised that his request to FBIHQ would be handled simultaneously with his request to the Oklahoma City field office under FOIPA number 1020657.  Id.  By letter dated June 3, 2005, FBIHQ advised Plaintiff that no records pertinent to his request were located by a search of the automated and manual indices of the Oklahoma City field office.[3]  Id. ¶ 9 and attached Exhibit E.  Plaintiff appealed the "no records" determination to the OIP, which, on February 27, 2006, advised Plaintiff that it had affirmed the FBI's action with respect to Plaintiff's FOIA/PA request.  Id. ¶¶10-12 and attached Exhibits F-H.

Dated:  April 6, 2006.                          Respectfully submitted,

                                                /s/
                                                KENNETH L. WAINSTEIN
                                                D.C. Bar # 451058
                                                United States Attorney

                                                 /s/
                                                RUDOLPH CONTRERAS
                                                D.C. Bar # 434122
                                                Assistant United States Attorney

                                                 /s/
                                                HEATHER R. PHILLIPS
                                                C.A. Bar # 19620
                                                Assistant United States Attorney
                                                Civil Division
                                                555 4th Street, N.W., Rm E4212

---

[3]   This letter failed to include a response to Plaintiff's request to FBIHQ which also located no records responsive to his FOIPA request.

Washington, DC 20530
(202) 514-7139

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELBY SELLS, | ) |
| | ) |
|     **Plaintiff,** | ) |
|   **v.** | )     **Civil Action No. 06CV0077 (RJL)** |
| | ) |
| **EXECUTIVE OFFICE FOR UNITED** | ) |
| **STATES ATTORNEYS, ET. AL,** | ) |
| | ) |
|     **Defendants** | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT DEA'S
## OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.    <u>INTRODUCTION</u>

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

Privacy Act ("PA"), 5 U.S.C. § 552a, and pertains to the processing of Plaintiff's FOIA-PA

requests by Defendants: (1) U.S. Marshals Service ("USMS"); (2) Drug Enforcement Agency

("DEA"); (3) Criminal Division of the U.S. DOJ ("Criminal Division"); (4) Bureau of Alcohol,

Tobacco and Firearms ("ATF"); (5) Federal Bureau of Prisons ("BOP"); (6) Internal Revenue

Service ("IRS"); (7) Federal Bureau of Investigation ("FBI"); and (8) Executive Office for

United States Attorneys ("EOUSA"). Defendants USMS, DEA, Criminal Division, ATF, BOP,

IRS, and FBI have (where applicable) completed their processing of Plaintiff's FOIA requests,

produced all responsive, non-exempt records in their possession, and explained their reliance

(where applicable) on FOIA Exemptions.[4]  There are no material facts in dispute and the

Defendants USMS, DEA, Criminal Division, ATF, BOP, IRS, and FBI are entitled to judgment

---

[4] Defendant EOUSA is still in the process of preparing its declaration, and on April 5, 2006 filed
a second motion for an extension of time to respond to Plaintiff's Complaint.

in their favor as a matter of law.  Accordingly, summary judgment should be granted pursuant to Fed. R. Civ. P. 56.[5]

## B.    <u>STANDARD OF REVIEW</u>

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides that the "judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  Where no genuine dispute exists as to any material fact, summary judgment is required.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation. <u>Id.</u> at 248.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that <u>there is an absence of evidence to support the non-moving party's case</u>." <u>Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987), (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) (emphasis in original)).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, a plaintiff must state specific facts or present some objective evidence that would enable the court to find he is entitled to relief.  In <u>Celotex Corp.</u>, 477 U.S. at 322-323, the Supreme Court held that, in responding to a motion for summary judgment, the party who bears

---

[5]  Plaintiff has filed a motion for partial summary judgment on the issue of exhaustion.  With the exception of Defendant DEA, the Defendants do not contest that Plaintiff has exhausted his administrative remedies.  Defendant DEA contends, however, that Plaintiff has not exhausted his administrative remedies, given the March 30, 2006 letter issued to Plaintiff advising him that he must pay a search fee of $784.00 before his FOIA request will be processed.  <u>See</u> Part D.2 below; Little Declaration ¶ 22 and attached Exhibit E.  As such, Defendant DEA opposes Plaintiff's partial motion for summary judgment.

the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  In another opinion that the Supreme issued on the same day it issued Celotex, the Court explained the circumstances under which summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . . [T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

Anderson, 477 U.S. at 249-50, 252.  See Johnson v. Digital Equipment Corp., 836 F. Supp. 14, 15 (D.D.C. 1993).  In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327.

FOIA cases are typically decided on motions for summary judgment.  See Cappabianca v. Commissioner, United States Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  To be entitled to summary judgment, the agency must prove that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure.  Weisberg v. United States Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, the defendant may rely on affidavits or declarations and other evidence by the agency which show that the documents are exempt from disclosure. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. United States Department of Army, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be granted

solely on the basis of agency affidavits [or declarations] if they "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish that the documents are within the FOIA exemption category; the district court need look no further." Citizens Commission on Human Rights v. FDA, 45 F.3d at 1329; Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991). See also Hayden, supra, 608 F.2d at 1387; Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

These declarations or affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).[6] There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C. 1997). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dep't of Justice, 844 F.2d 126, 129 (3d Cir. 1988).[7] The Court exercises de novo review over FOIA matters, and

---

[6] "A Vaughn index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." Citizens Commission on Human Rights, 45 F.3d at 1326. "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

[7] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Dep't of Justice, 444 F. Supp. 458, 462 (D.D.C. 1978).

the burden is on the agency to justify all nondisclosures.  See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

In support of this motion, Defendants USMS, DEA, Criminal Division, BOP, ATF, IRS, and FBI have provided declarations and a Vaughn index (where applicable).  These declarations provide the Court with sufficient information to review these Defendants' actions and responses to Plaintiff's FOIA request and grant summary judgment in the Defendants' favor.

**C.    STATEMENT OF FACTS**

See the Defendants' Statement of Material Facts Not in Genuine Dispute, incorporated herein by reference.

**D.    DEFENDANTS USMS, DEA, CRIMINAL DIVISION, ATF, BOP, IRS, AND FBI ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR.**

**1.    THE USMS PROPERLY WITHHELD INFORMATION PURSUANT TO THE PRIVACY ACT AND EXEMPTION 7(C) FROM THE RESPONSIVE DOCUMENTS RELEASED TO PLAINTIFF.**

In response to his FOIA request, a total of 79 pages were released by the USMS to Plaintiff.  See Bordley Declaration at ¶ 7. Of those 79 pages, sixty-five pages were released entirely, while fourteen pages were released with information excised and withheld pursuant to Exemption 7(C).  Bordley Declaration at ¶ 7.  To justify these redactions, the USMS must show that they are subject both to a Privacy Act exemption and a FOIA exemption.  See Martin v. Office of Special Counsel, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  The USMS has made the necessary showing here, and the Court should therefore grant the USMS's motion for summary judgment.

Exemption (j)(2) authorizes an agency to promulgate rules to exempt certain systems of records from (among other things) subsection (d) of the Privacy Act -- the subsection providing an individual the right of access to records pertaining to himself.  5 U.S.C. § 552a(j)(2).  The exemption applies to systems of records that are:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status;  (B) information compiled for the purpose of a criminal investigation, including   reports of informants and investigators, and associated with an identifiable individual;  or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

Id.  The rules must explain "the reasons why the system of records is to be exempted from a provision of this section."  Id.  The USMS has promulgated such regulations at 28 C.F.R. § 16.101(a), (q), exempting records compiled for law enforcement purposes in connection with the USMS receipt, processing, transportation and custody of prisoners, the execution of Federal arrest warrants, and the investigation of fugitive matters.

It follows therefore that Plaintiff cannot rely on the Privacy Act to obtain any of the excised portions of records at issue.  Plaintiff is only entitled to access records about him pursuant to the FOIA, and then only to the extent that the exemptions to the FOIA do not apply.  See Martin, 819 F.2d at 1184.  Moreover, and as described in the Bordley Declaration, the excised portions of the records pertain solely to third parties, and not to Plaintiff.  Bordley

Declaration ¶ 13. Therefore subsection (d) of the Privacy Act would not allow Plaintiff access to this information in any event.

With respect to the redactions made by the USMS to fourteen of the pages released to Plaintiff, these were properly made pursuant to 5 U.S.C. § (b)(7)(C). The FOIA exempts from the requirement of disclosure:

> (7) records or information compiled for law enforcement purposes, . . . to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

5 U.S.C. § (b)(7)(C).

In the instant case, the USMS properly and reasonably applied this exemption to withhold the names of USMS employees, the telephone number of a USMS employee, the names and other information of prisoners (other than Plaintiff), the names and information of third-party individuals, the names of government employees, handwritten information pertaining to another prisoner, and the names of law-enforcement officers. Bordley Declaration at ¶ 13. Release of this third-party information would constitute an unwarranted invasion of these individuals' right to personal privacy.

In order to overcome legitimate privacy interests, the requester must not only demonstrate the existence of a public interest, but also that the public interest is both significant and compelling. Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990). Exemption 7(C)'s privacy interests require agencies to safeguard "the personal privacy of citizens against the uncontrolled release of information compiled through the power of the state." National Archives v. Favish, 541 U.S. 157, 172 (2004). To protect such privacy interests, the statute requires:

the person requesting the information to establish a sufficient reason for the dis-
closure. First, the citizen must show that the public interest sought to be advanced is
a significant one, an interest more specific than having the information for its own
sake. Second, the citizen must show the information is likely to advance that
interest. Otherwise, the invasion of privacy is unwarranted.

<u>Id.</u> (emphasis added).

This Court's decisions have consistently supported nondisclosure of names or other
information identifying individuals appearing in law enforcement records, including
investigators, suspects, witnesses, and informants. See Fitzgibbon v. Cent. Intelligence Agency,
911 F.2d 755, 767-68 (D.C. Cir.1990); Keys v. United States Dep't of Justice, 830 F.2d 337,
347-48 (D.C. Cir.1987); King v. Dep't of Justice, 830 F.2d 210, 234-35 (D.C. Cir. 1987); Puerto
Rico Judiciary Comm., 823 F.2d at 588; Bast v. Fed. Bureau of Investigation, 665 F.2d 1251,
1254-55 (D.C. Cir.1981); Lesar v. United States Dep't of Justice, 636 F.2d 472, 487-88 (D.C.
Cir.1980). In SafeCard Services, Inc. v. SEC, the Court adopted a categorical rule permitting an
agency to withhold information identifying private citizens mentioned in law enforcement
records, unless disclosure is "necessary in order to confirm or refute compelling evidence that
the agency is engaged in illegal activity." 926 F.2d 1197, 1206 (D.C. Cir.1991); see also Nation
Magazine, Washington Bureau v. United States Customs Serv., 71 F.3d 885, 896 (D.C.
Cir.1995) (explaining and reaffirming the SafeCard rule).

Plaintiff presents no public interest to warrant disclosing the names of law enforcement
officers and other government employees or fellow prisoners. Law enforcement personnel have
protectable privacy interests in their anonymity. Computer Prof'ls for Social Responsibility v.
U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996); Farese v. U.S. Dep't of Justice, 683 F.
Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to figure out the

-8-

individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish the privacy interests at stake. Fitzgibbon, 911 F.2d at 755; Weisberg, 745 F.2d at 1476.

Conversely, there is a legitimate public interest in promoting the efficient performance of official duties which is fostered by shielding government employees from unnecessary public attention, harassment, and annoyance or possible danger. Additionally, one who serves as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of their official duties. Public identification of these law enforcement officers and other government employees could subject them to harassment and unwarranted scrutiny, both in the course of performing their official duties and in their private lives, and could possibly pose a danger to their life or physical safety. Therefore, the public interest weighs in favor of non-disclosure to foster privacy and the efficient performance of official duties regarding the receipt, processing, transportation and custody of prisoners, the execution of Federal arrest warrants, and the investigation of fugitive matters. Absent a legitimate public interest, disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. See 5 U.S.C. § 552 (b)(7)(C); Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar, 636 F.2d at 487-88.

Similarly, Plaintiff has not, and cannot, present a public interest in disclosure of the names of and information pertaining to other third-party individuals, including other prisoners. Further, he provides no indication as to how disclosure of such information would meet the basic purpose of the FOIA, i.e., to shed light on an agency's performance of its statutory duties, nor is there any public interest in disclosure that would outweigh the privacy of these individuals.

Albuquerque Publ'g Co. v. Dep't of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989).  The public

interest in disclosure is limited to the FOIA's "core purpose" of shed[ding] light on an agency's

performance of its statutory duties."  Reporters Comm. for Freedom of the Press v. U.S. Dept of

Justice, 489 U.S. 749, 773 (1989) (sustaining nondisclosure of criminal records or "rap sheets").

Disclosure to Plaintiff would be equivalent to disclosure to the public and, as such, could

reasonably be expected to constitute an unwarranted invasion of personal privacy since no

legitimate public interest would be served by disclosure.  To the contrary, disclosure could

subject the individuals to harassment and unwarranted scrutiny for having been associated with a

criminal investigation or the detention of a federal criminal defendant.  See 5 U.S.C §

552(b)(7)(C).

        The USMS properly redacted information from fourteen pages of responsive documents

in light of Exemption (b)(7)(C), and properly withheld the protected information.  See Bordley

Declaration ¶¶ 10-13.  Again, Exemption (b)(7)(C) was applied here to redact information to

protect the identity of third-party individuals, such as prisoners other than Plaintiff, law-

enforcement officers, and USMS personnel, as the release of such information could subject

these persons to an unwarranted invasion of their personal privacy.  Bordley Declaration ¶ 13.

The USMS therefore properly determined that such information was exempt from disclosure by

law, and that there was no public interest in the release of this privacy-protected information,

because its dissemination would not help explain government activities and operations.  No

public interest would counterbalance the law enforcement and third-party individuals' privacy

right in the information withheld.  Moreover, there is no indication that any individual provided

any authorization or consent to disclose such information.  See 5 U.S.C. § 552a(b) ("No agency

shall disclose any record . . . contained in a system of records . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains" unless otherwise authorized by law).

Finally, the USMS released all reasonably segregable material. The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

In the instant case, the USMS has met its segregability obligation. First, the agency has

set forth in a sworn declaration that the documents have been reviewed for segregability, as well

as its determination that no additional information could be released to the Plaintiff.  See Bordley

Declaration ¶ 15.  Second, it is apparent that the non-released information, consisting of the

names of USMS employees, the telephone number of a USMS employee, the names and other

information of prisoners (other than Plaintiff), the names and information of third-party

individuals, the names of government employees, handwritten information pertaining to another

prisoner, and the names of law-enforcement officers, cannot be further segregated.  Such

information is inherently non-segregable.  In sum, the Bordley declaration and Vaughn index

adequately demonstrate that all reasonably segregable, non-exempt information has been

disclosed.  For the reasons set forth by Mr. Bordley in his Declaration, the USMS's application

of Exemption 7(C) to redact certain information from fourteen pages disclosed to Plaintiff should

be upheld, and the Court should grant Defendant USMS's motion for summary judgment.

**2.      THE COURT LACKS JURISDICTION OVER PLAINTIFF'S PENDING FOIA REQUEST TO THE DEA AS HE HAS NOT YET EXHAUSTED HIS ADMINISTRATIVE REMEDIES.**

On March 30, 2006, Plaintiff was informed that because of the scope of his search, he

was required to pay a search fee in the amount of $784.00 before the DEA would continue

processing his FOIA request.  Little Declaration ¶¶ 21-24 and attached Exhibit E.  Plaintiff has

not yet paid this fee, nor provided the DEA with a response to their March 30, 2006 letter.  As

such, dismissal of Plaintiff's action against the DEA is warranted because Plaintiff has failed to

exhaust his administrative remedies.[8]

---

[8]  As noted above, Plaintiff has filed a "motion for partial summary judgment" against the DEA
on the issue of exhaustion of administrative remedies.  Given that Defendant DEA issued a
March 30, 2006 fee letter to Plaintiff (subsequent to the filing of Plaintiff's motion for partial
summary judgment), and Plaintiff has not yet responded to the letter nor paid the requisite fees,

Under the FOIA, administrative remedies must be exhausted prior to seeking judicial review.  See Oglesby v. United States Dep't of the Army, 920 F.2d 57, 61 (D.C. Cir. 1990). Justice Department regulations, in accordance with the FOIA,  provide that agency components "shall charge for processing requests under the FOIA" and "ordinarily shall collect all applicable fees before sending copies of requested records to a requester."  28 C.F.R. § 16.11(a).  When a requester has failed to pay an assessed fee, he has failed to comply with a necessary administrative requirement of the FOIA and has thereby failed to exhaust his administrative remedies.  As the Court held in Trueblood v. United States Dep't of the Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996), a plaintiff must exhaust his administrative remedies by paying any applicable fees as "a condition precedent to judicial review of a FOIA suit."  Accord Stebbins v. Nationwide Mutual Ins., 757 F.2d 364, 366 (D.C. Cir. 1985) (noting that "exhaustion of [administrative] remedies is required under the Freedom of Information Act before a party can seek judicial review."); see also Center to Prevent Handgun Violence v. Department of the Treasury, 981 F. Supp. 20, 23 (D.D.C. 1997) (finding that requester failed to exhaust administrative remedies by not paying assessed fee), appeal dismissed, No. 97-5357 (D.C. Cir. Feb. 26, 1997).

Moreover, a FOIA plaintiff is not relieved of his obligation to pay the assessed fee because he has subsequently filed a FOIA lawsuit.  See Pollack v. Department of Justice, 49 F.3d 115, 119-20 (4th Cir. 1995) (holding that commencement of a FOIA action does not relieve requester of obligation to pay fees).  Indeed, exhaustion of administrative remedies does not occur until the outstanding fees are paid.  See Trueblood, 943 F. Supp. at 67; see also Oglesby,

contrary to the assertions in his motion, Plaintiff has not exhausted his administrative remedies with respect to Defendant DEA.

920 F.2d at 66 (holding that exhaustion of administrative remedies occurs when "the required fees are paid or an appeal is taken from the refusal to pay fees").

A FOIA lawsuit "is subject to dismissal for lack of subject matter jurisdiction if [the plaintiff] fails to exhaust all administrative remedies." Trueblood, 943 F. Supp. at 67; see also Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986); Center to Prevent Handgun Violence, 981 F. Supp. at 23; Crooker v. United States Secret Serv., 577 F. Supp. 1218, 1219 (D.D.C. 1983). Indeed, "strict enforcement of the exhaustion doctrine is favored in FOIA cases." Center to Prevent Handgun Violence, 981 F. Supp. at 23. Plaintiff's failure to pay the assessed fee is therefore fatal to Plaintiff's claim. As the Court has concluded in a similar case:

> In a FOIA case, exhaustion of administrative remedies is a condition precedent to judicial review. Stebbins v. Nationwide Mutual Insurance, 757 F.2d 364, 366 (D.C. Cir. 1985). Thus, a plaintiff's FOIA claims are subject to dismissal for lack of subject matter jurisdiction if he fails to exhaust administrative remedies. Dettmann v. U.S. Department of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986). Exhaustion of administrative remedies does not occur until the required fees are paid or an appeal is taken from the government's refusal to waive fees. Oglesby v. U.S. Department of Army, 920 F.2d 57, 66 (D.C. Cir. 1990); Trueblood v. U.S. Department of the Treasury, 943 F.Supp. 64, 68-69 (D.D.C. 1996). In support of its motion for summary judgment, the government argues that the Court lacks jurisdiction because Jeanes failed to pay the assessed search fees and also failed to appeal the denial of his request for a fee waiver. Jeanes responds that this Court has subject matter jurisdiction because he constructively exhausted his administrative remedies when the agency did not respond to his request within the statutory period, and then only notified him of the estimated fees for processing his request after he had already filed suit. Moreover, Jeanes asserts that after the government filed its motion for summary judgment, he attempted to pay the estimated fees, but was unable to do so.

> The Court finds that it lacks subject matter jurisdiction over this action because there is no evidence in the record that Jeanes has

properly paid the fees assessed by the agency to process his request.

Jeanes v. U.S. Department of Justice, 357 F. Supp. 2d 119, 122-23 (D.D.C. 2004).  This same

conclusion applies to the instant action, where Plaintiff has failed to pay the requisite fees.

Because Plaintiff has failed to pay the properly assessed search fee in the amount of

$784.00, Plaintiff has failed to exhaust his administrative remedies under the FOIA and has

failed to satisfy the prerequisite to defendant's obligation to process Plaintiff's request.  See 28

C.F.R. § 16.11(i)(4); Little Declaration ¶¶ 21-24, and attached Exhibit Little-E.  Consequently,

Defendant respectfully submits that this action should be dismissed.

### 3.    THE CRIMINAL DIVISION'S SEARCH REVEALED NO RESPONSIVE RECORDS.

On August 30, 2005, the Criminal Division advised Plaintiff that it had completed its

search for relevant Criminal Division records in his name and had located no records responsive

to his request.  Hsu Declaration ¶9, and attached Exhibit 7.  To prevail in a FOIA case, Plaintiff

must show that an agency has "(1) 'improperly' (2) 'withheld' (3) 'agency records.'"  United States

Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989), quoting Kissinger v. Reporters

Comm. for Freedom of Press, 445 U.S. 136, 150 (1980); see 5 U.S.C. § 552(a)(4)(B).  To obtain

summary judgment in its favor, the agency's burden is to establish that it has conducted a search

reasonably calculated to uncover all responsive records.  Oglesby, 920 F.2d at 68; Weisberg, 745

F.2d at 1485.  Agency affidavits are accorded a presumption of good faith, which cannot be

rebutted by purely speculative claims about the absence and discoverability of documents.

SafeCard, 926 F.2d at 1200.  The issue is not whether there might exist any other records

possibly responsive to the request, but rather whether the actual search for responsive records

was reasonable.  Id.; Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986).  The agency can

establish the reasonableness of its search by affidavits if they are relatively detailed, non-conclusory, and made in good faith.  Weisberg, 745 F.2d at 1485; Perry v. Block, 684 F.2d 121, 125-26 (D.C. Cir. 1982).  As long as the agency submits detailed affidavits showing the scope and method of the search, then, in the absence of countervailing evidence, or apparent inconsistency of proof, dismissal or summary judgment is appropriate in its favor.  Perry, 684 F.2d at 127.

The agency's search should be reasonably calculated to uncover all responsive records. Weisberg, 745 F.2d at 1485.  Therefore, an agency should search those offices or components reasonably likely to have responsive records.  Knight v. Food & Drug Admin., 938 F. Supp. 710, 716 (D. Kan. 1996).  The FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request when responsive documents are likely to be located in one place.  Marks v. United States Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does the FOIA require that an agency search every record system.  Oglesby, 920 F.2d at 68.  Furthermore, the agency is not required to speculate about potential leads to the location of the responsive documents.  Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996).

Here, as described in the attached Hsu Declaration, the Criminal Division searched for documents respecting the Plaintiff in its centralized records index, JUSTICE/CRM-001 (Central Criminal Division Index File and Associated Records).  Hsu Declaration ¶ 11.  When a search of this Central Index reflects responsive, or potentially responsive records, a search is sent to the section identified as having custody of the records for such records.  Id.  In addition, in the instant case, Plaintiff requested that searches be undertaken of the following Privacy Act

systems: JUSTICE/CRM-003 (File of Names Checked to Determine if Those Individuals have been the Subject of an Electronic Surveillance), JUSTICE/CRM-004 (General Litigation and Legal Advice Section), JUSTICE/CRM-012 (Organized Crime and Racketeering Section), JUSTICE/CRM-019 (Requests to the Attorney General for Approval of Applications to Federal Judges for Electronic Interceptions), JUSTICE/CRM-022 (Witness Immunity Records), and JUSTICE/CRM-025 (Tax Disclosure Index File and Associated Records). Hsu Declaration ¶ 12. Plaintiff additionally requested a search of the Narcotics and Dangerous Drug Section. Id. and attached Exhibit 4.

Pursuant to long-standing FOIA/PA search procedures, a search sheet with a copy of Plaintiff's request was transmitted to all sections that may have records responsive to the Plaintiff's request. Hsu Declaration ¶ 13. A copy of the "Privacy Act Identification and Request Form" which Plaintiff had completed was forwarded with the search sheets. Id. and attached Exhibit 3. Designated personnel employed by the pertinent sections undertook a search for responsive materials and reported the results by means of individual, signed forms to the Criminal Division FOIA/PA Unit. Hsu Declaration ¶ 13. Plaintiff's search – as are all FOIA requests – was undertaken in the same manner as if the Criminal Division were seeking the information for its own, official purposes. Id. By this means, the Criminal Division aims to ensure that its searches fully meet the criteria established under the Freedom of Information Act and the Privacy Act and interpretative decisional law.[9] Id.

_____

[9] Unlike the Federal Bureau of Investigation or the Federal Bureau of Prisons, the Criminal Division assigns no special identification numbers to individuals. Nor does it maintain files based on social security numbers. Nor does it maintain any field offices outside the Washington, D.C. area. Finally, unlike certain other law enforcement components, the Criminal Division maintains no separate "see reference" or "cross-reference" files requiring separate searches.

Ms. Hsu personally reviewed all of the original, signed search responses in this case, and verified that all of the Criminal Division's Privacy Act systems of records designated by Plaintiff were searched and no record responsive to Plaintiff's request was located. Hsu Declaration ¶ 14. Ms. Hsu also noted that the absence of responsive Criminal Division records is not surprising in this case. Id. The great majority of Federal crimes are prosecuted by the local United States Attorney's Offices independently of the Criminal Division, and copies of such records are ordinarily not maintained in the Criminal Division. Hsu Declaration ¶ 14.

The Criminal Division has carried its burden to show that it conducted a search reasonably calculated to uncover all responsive records. See Weisberg, 745 F.2d at 1485; Perry, 684 F.2d at 126. That is all that is required. See Kuffel v. United States Bureau of Prisons, 882 F. Supp. 1116, 1120-21 (D.D.C. 1995) (no jurisdiction exists over claims where agency conducted good faith, reasonable search and found no responsive documents). However, the search did not uncover any responsive documents. Therefore, the Court should find that the Criminal Division's search was adequate and that responsive documents do not exist.

As no responsive records were found, Plaintiff's FOIA case against the Criminal Division should therefore be dismissed, as a court has jurisdiction over a FOIA action only where an agency has improperly withheld agency records. 5 U.S.C. §552(a)(4)(B). Here, the Criminal Division has not withheld any records because no documents responsive to Plaintiff's request exist. As a result, this case does not present a justiciable controversy. Federal courts are without power to resolve disagreements that fail to meet this jurisdictional prerequisite. City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983); Flast v. Cohen, 392 U.S. 83, 94-101 (1986). As such, the Court should grant Defendant Criminal Division's motion for summary judgment and

dismiss Plaintiff's suit.

**5.    THE ATF HAS PROPERLY WITHHELD DOCUMENTS AND INFORMATION FROM PLAINTIFF PURSUANT TO EXEMPTIONS (b)(2), (b)(7)(C), AND (b)(7)(D).**

In response to Plaintiff's FOIA request, ATF located 142 responsive pages of documents. Graham Declaration ¶ 41 and attached Vaughn index.  Graham Declaration ¶ 15 and attached Vaughn index. Pursuant to FOIA Exemption (b)(2), the ATF withheld internal administrative codes used in criminal law enforcement databases including file numbers and identification codes, and accounting codes.  These redactions and withholdings pursuant to Exemption (b)(2) were proper.

Under Exemption (b)(2), the government is not required to disclose information "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Only information that is "used for predominantly internal purposes" is protected under Exemption 2. Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir.1981). Information is "predominantly internal" if it does not "purport to regulate activities among members of the public or set standards to be followed by agency personnel in deciding whether to proceed against or take action affecting members of the public."  Cox v. United States Dep't of Justice, 601 F.2d 1, 5 (D.C. Cir.1979).  If the "predominantly internal" test is met, an agency may withhold material if it shows that "either [1] disclosure may risk circumvention of agency regulation, or [2] the material relates to trivial administrative matters of no genuine public interest."  Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir.1992) (citation omitted).

ATF invoked Exemption (b)(2) with respect to information in the responsive documents that is contained in criminal law enforcement databases such as the DOJ's Consolidated Asset

-19-

Tracking System (CATS).  Graham Declaration ¶ 16.  CATS provides a consolidated asset

forfeiture database for both administrative and judicial cases to track information and support

law enforcement operations in all of the asset forfeiture program business functions, including

seizure, custody, notification, forfeiture, claims, petitions, equitable sharing, official use, and

disposal.  Id.  CATS provides a national, centralized asset forfeiture database for Federal law

enforcement agencies.  Id.  The data displayed on screen prints of CATS records is redacted

because information displayed identifies how property is coded.  Id.

The information redacted under (b)(2) from the documents provided to Plaintiff,

consisting of internal administrative codes used in criminal law enforcement databases

(including file numbers and identifying codes) and accounting codes, was information that is for

either administrative and/or law enforcement purposes only, and is of no legitimate interest to

the public.  Graham Declaration ¶ 17.  Moreover, the disclosure of this material is so trivial it

does not warrant release.  Id.; Edmonds v. FBI, 272 F. Supp. 2d 35, 51 (D.D.C. 2003).  The

Court should therefore uphold ATF's application of Exemption (b)(2).

ATF's application of (b)(7)(C) was also warranted.  As an initial matter, ATF is a

criminal and regulatory agency with the DOJ responsible for, among other things, enforcing

Federal firearms laws including the Gun Control Act of 1968, 18 U.S.C. sec. 921-930, the

Federal explosive laws, 18 U.S.C. Chapter 40, and the National Firearms Act, 26 U.S.C. Chapter

52.  See 28 C.F.R. § 0.130.  FOIA Exemption (b)(7)(C) protects records or information compiled

for law enforcement purposes, production of which could reasonably be expected to constitute an

unwarranted invasion of personal privacy.  See 5 U.S.C. § 552(b)(7)(C).

Pursuant to (b)(7)(C), ATF withheld: the names of Federal law enforcement staff

employees as well as information by which those individuals could be identified; the names of

Federal and state law enforcement agents as well as information by which those individuals

could be identified, including Social Security Numbers; the names of third party individuals

referenced in connection with the investigation either as witnesses or leads, as well as

information by which those individuals could be identified; and, the names of individuals

investigated by ATF and any information by which this individual could be identified by a third

party.  Graham Declaration ¶ 17 and attached Vaughn Index.

     Exemption  (b)(7)(C) requires a balancing of the individual's right to personal privacy

against the public's interest in shedding light on an agency's performance of its statutory duties.

See Part D.1, above.  As noted, under this Exemption, ATF withheld the names, addresses,

phone numbers, titles and other identifying information related to third party individuals and

witnesses interviewed by ATF during the course of the investigation, law enforcement officers,

and other private individuals merely mentioned in ATF's files.  Graham Declaration ¶ 17 and

attached Vaughn Index.  The individuals whose identities have been protected are not the

requester's. Graham Declaration ¶ 20.  Furthermore, Plaintiff presented no waivers that would

permit release of any third-party individual's information.  Id.  Moreover, the individuals' names

and identifying information were compiled in connection with an investigation into violations of

various crimes including false statements to an FFL and possession of a firearm by a felon, and

as such, meet Exemption 7's threshold requirement of "records or information compiled for law

enforcement purposes."  Graham Declaration ¶ 21.  Revealing this information is unlikely to add

to the public's understanding of how an agency works or how well it performs its duties.

     Moreover, the third parties referenced in Plaintiff's files are described in sufficient detail

-21-

to allow for the identification of those third parties by persons familiar with the circumstances and facts of ATF's investigation of Plaintiff.  Graham Declaration ¶ 25.  ATF determined that third parties could reasonably be expected to be embarrassed and humiliated by being associated with this investigation.  Id.  Further, ATF determined that the witnesses referenced in Plaintiff's files has the very real potential to endanger such witnesses or cause harassment and harm to the witness' lives and reputations as the underlying offenses involved the use of firearms and were connected to the manufacturing of illegal narcotics.  Id.  In addition, disclosure may well discourage future witnesses from cooperating with ATF.  Id.  After balancing the interests at stake, ATF determined that the types of personal information contained within its files must be withheld because disclosure of the information could reasonably be expected to cause the third parties referenced in its files and third party witnesses embarrassment, harassment, and harm, and would do little, if anything at all, to aid the public's understanding of the ATF.  Id.

ATF also invoked Exemption 7(C) to protect the names and identifying information of third parties who were investigated by ATF.   Graham Declaration ¶ 26.  ATF determined that the disclosure of this information could reasonably be expected to constitute an unwarranted invasion of these third parties' privacy, because being associated with ATF's criminal investigation into Plaintiff's unlawful actions carries a stigmatizing and negative connotation.  Id. Thus, ATF determined that the third parties possess a substantial privacy interest in not having this information disclosed.  Id.  After ATF identified the substantial privacy interests at stake, ATF balanced those interests against any public interest in the disclosure.  Id.  ATF determined that because the disclosure of the names and identities of these third parties would not shed any light on ATF's activities, it could not identify any discernible public interest in the disclosure.

Id.

ATF also asserted Exemption (b)(7)(C) to protect the identities of ATF special agents, and other law enforcement personnel such as supervisory and technical personnel who were involved in law enforcement operations.  Graham Declaration ¶ 27.  The identities of ATF special agents and other law enforcement personnel that appear in law enforcement records are protected since disclosure might seriously prejudice their effectiveness in conducting investigations to which they are assigned or subject them to unwarranted harassment.  Id.  In determining whether to identify ATF Special Agents and other law enforcement personnel, ATF balanced the interest in disclosure against the individuals' privacy interest.  Graham Declaration ¶ 28.  Plaintiff did not assert any discernible public interest in this particular type of information.  ATF determined that the privacy interests of law enforcement personnel substantially outweigh any public interest, and that the names of law enforcement personnel would not be disclosed.  Id.  The fact that Plaintiff may know, or be able to independently determine the identities of some agents or other law enforcement personnel whose names have been withheld does not diminish the exemption's protection of these individuals.  Fitzgibbon, 911 F.2d at 755; Weisberg, 745 F.2d at 1476. Consequently, the deleted information was properly withheld under exemption (b)(7)(C).

ATF also withheld information – specifically, the names or other identifying information of a confidential source – pursuant to FOIA Exemption (b)(7)(D).  Graham Declaration ¶ 29 and attached Vaughn index. Exemption (b)(7)(D) expressly relates to such information compiled for law enforcement purposes the disclosure of which could reasonably be expected to reveal the identity of a confidential source and/or information furnished by a confidential source.  See

Mays v. DEA, 234 F.3d 1324 (D.C. Cir. 2000). The applicability of the exemption in each case depends upon whether the particular source who furnished the information at issue was granted confidentiality, either expressly or by implication. See DOJ v. Landano, 508 U.S. 165, 172 (1993). The ATF reports at issue contain interviews and accounts of interviews of named sources of information who provided information regarding specifics of Plaintiff's criminal conduct. Graham Declaration ¶ 31.

When a source was not expressly granted a promise of confidentiality, certain circumstances characteristically support an inference of confidentiality. Graham Declaration ¶ 32. The character of the crime being investigated, and the source's relation to the nature of the crime, required the inference of confidentiality. Id. It is the experience of ATF that violence is often involved with violations of the Federal firearms and explosives laws and that people who provide information may be in danger. Graham Declaration ¶ 33. In this instance, because Plaintiff was convicted of firearm offense and a drug related crime, ATF determined that the disclosure of this information could place the persons that provided the information to ATF in danger. Id. It is clear that if this information were released the source would be identified to Plaintiff. Id. The reports indicate that the individuals freely cooperated in providing investigative details about Plaintiff. Id.

ATF also determined that it was reasonable to infer that at the time their cooperation was secured that these individuals expected that their identities and the information they provided was provided on a confidential basis and that it would remain so. Graham Declaration ¶ 34. Mr. Graham was also been informed by ATF special agents that the release of the names of cooperating individuals such as those in the underlying criminal case at issue here could

jeopardize future ATF operations by deterring similarly situated individuals from providing needed information. Id.

ATF reviewed each page of the material identified as responsive to determine whether all non-exempt, reasonably segregable information was released to Plaintiff. Graham Declaration ¶ 42  As a result of this review, it determined that all non-exempt, reasonably segregable information had been provided to Plaintiff. Id. In fact, a review of the filed indicated that a substantial portion of the file was released with only a name or tracking code redacted on each page. Id. and attached Vaughn Index. As discussed above, the extensive additional review undertaken upon receipt of Plaintiff's Complaint did in fact reveal two additional pages in which information was ultimately segregated and released. Graham Declaration ¶¶ 14, 42.

In sum, the Graham declaration and Vaughn index adequately demonstrate that all reasonably segregable, non-exempt information has been disclosed. For the reasons set forth by Mr. Graham in his Declaration, ATF's application of FOIA Exemptions (b)(2), 7(C) and (7)(D) to redact certain information from the documents disclosed to Plaintiff should be upheld, and the Court should grant Defendant ATF's motion for summary judgment.

## 6.    THE BOP HAS PROPERLY WITHHELD DOCUMENTS UNDER EXEMPTIONS (7)(C), (7)(F) AND (b)(2).

The BOP processes all requests by individuals (or entities) for records pertaining to themselves (as in this case) under both the Freedom of Information and the Privacy Acts in order to provide the requester the maximum disclosure authorized by law. Summers Declaration ¶ 18. The BOP's system of records is exempt from the Privacy Act of 1974, 5 U.S.C. § 552a by virtue of subsection (j)(2) of The Act. See 28 C.F.R. § 16.81 (2000). Thus, Plaintiff's access rights are limited to those provided by the FOIA. Id.; See Part D.1 above (respecting USMS

release and application of subsection j(2) of the Privacy Act).

In total, the BOP located 29 pages responsive to Plaintiff's FOIA request.  Summers Declaration ¶ 10 and attached Exhibit 6.  Two pages were released in full; nine pages were redacted; and eighteen pages were withheld in full.  Summers Declaration ¶ 18 and attached Exhibit 6.  The redactions and withholdings were made pursuant to FOIA Exemptions (7)(C), (7)(F), and (b)(2).  Id.

To invoke Exemption (b)(7)(C) the BOP must first demonstrate that records were compiled for law enforcement purposes.  In this case, the records at issue were compiled for law enforcement purposes during the course of the BOP's performance of its law enforcement functions of protecting inmates, staff and the community.   Summers Declaration ¶ 21.  The records requested by Plaintiff are part of the Inmate Central Records System (JUSTICE/BOP-005).  Id.  Consequently, the records at issue are central to the BOP's charge of carrying out its law enforcement functions.  Id.

Exemption § 522(b)(7)(C) of the FOIA exempts the mandatory release of records or information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The information withheld from Plaintiff pursuant to Exemption (b)(7)(C), which was compiled by the BOP as part of its law enforcement mandate, consisted of personal information about third parties.  Summers Declaration ¶ 22.

A further step in determining whether there would be a "clearly unwarranted invasion of personal privacy" is to balance the interests of protecting an individual's privacy and the public's right to information concerning operation or activities of the government.  In this case, release of

the FOIA Exempt records of third parties maintained in Plaintiff's central file will in no way

shed light on any illegal government activities.   The privacy rights of the third parties, in this

case inmate separatees of Plaintiff, far outweigh any public interest in the release of the records.

Plaintiff has indicated no public interest in disclosure of the names of third parties.  As such, the

BOP properly withheld information respecting third-party individuals, specifically inmate

separatees, under Exemption (b)(7)(C).  See Part D.1 above (respecting USMS invocation of

Exemption (b)(7)(C).

The BOP also properly redacted information and withheld documents under Exemption

(7)(F) of the FOIA.  That Exemption provides for the withholding of information or records

compiled for law enforcement purposes, the release of which could endanger the life or physical

safety of any individual.  In general, this exemption has been interpreted to apply to names and

identifying information of law enforcement officers, witnesses, confidential informants and other

third persons who may be unknown to the requester.  See Durham v. United States Department

of Justice, 829 F. Supp. 428, 434 (D.D.C.1993); Public Employees for Environmental

Responsibility (Peer), Rocky Mountain Chapter v. U.S. E.P.A., 978 F. Supp. 955, 961 (D.

Colo.1997) (citing cases).  After careful consideration of the safety and security concerns of

other individuals/inmates, the BOP determined that documents should be withheld pursuant to

Exemption 7(F).  Summers Declaration ¶ 24.

Finally, the BOP properly redacted information and withheld documents pursuant to

Exemption (b)(2).  As noted above, see Part D.5, Exemption (b)(2) protects from mandatory

disclosure those documents which "relate solely to the internal personnel rules and practices of

an agency."  Exemption (b)(2) covers two distinct categories of records, depending upon

-27-

whether the records fall into the "high" (b)(2) category or the "low" (b)(2) category.

Exemption "low" (b)(2) of the FOIA protects from disclosure internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit. Information can be protected through the use of "low" (b)(2) only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and other like administrative markings are exempt from disclosure.

Exemption "high" (b)(2) of the FOIA protects from disclosure internal matters of a far more substantial nature which would risk the circumvention of a statute or agency regulation. Information can be protected through the use of "high" (b)(2) that is implicitly accorded law enforcement activities pertaining to, for example, guidelines conducting investigations, procedures for prison security, and vulnerability assessments. In the instant case, the BOP legitimately withheld records pursuant to (b)(2) "high."

Pursuant to the BOP's duty to manage Federal institutions in a manner which provides for the safekeeping of inmates in their custody, the BOP documents an inmate's Central Inmate Monitoring (CIM) assignment, meaning that there are other individuals, who may or may not be committed to the BOP, from whom an inmate is to be separated from for their mutual protection. Summers Declaration ¶ 28. Documentation to support "Separation" or similar CIM assignments, as determined by BOP, is routinely maintained in the "FOI Exempt" section of an inmate's central file. Id. In addition to identifying a specific threat, or individual from who an inmate must be separated, these documents also contain other information which could lead to the

identification of a specific threat, a separated individual, or the location of a separated individual.
Id.  The release of such information could allow an individual to circumvent the BOP's efforts to
minimize those threats and ultimately increase threats to the personal safety of individuals as
well as the security of BOP institutions.  Id.  As such, given the information at issue respecting
CIM assignments, the BOP properly redacted and withheld this information as its disclosure
could provoke circumvention of the law by prisoners who ascertain CIM assignments.  Kuffel,
882 F. Supp. at 1123 (citations omitted); Schwaner v. Air Force, 898 F.2d 793, 794 (D.C. Cir.
1990).

The BOP also considered the segregability of information contained in the withheld and
excised pages during the course of the administrative review process.  Summers Declaration ¶
12.  Each document, and the pages contained in each document, was evaluated for segregability
during the administrative process.  Summers Declaration ¶ 30. Factored into the segregability
determination was the knowledge that the release of the information could jeopardize the privacy
of third parties, and release of the information could endanger the physical safety of other
individuals/inmates.  Summers Declaration ¶ 12.  Where a document was withheld in its entirety,
the agency also determined that no meaningful portions could not reasonably be released without
destroying the integrity of such documents as a whole.  Id.

Specifically, nine documents (Central Inmate Monitoring (CIM) Separatee Information),
were excised in part pursuant to §§ 522(b)(2)High, (b)(7)(C), and (b)(7)(F) because they
contained information maintained solely for BOP purposes relating to internal law enforcement
agency practices; because it would constitute an unwarranted invasion of the personal privacy of
other inmates, and because release of the information could endanger the physical safety of other

individuals/inmates.  Additionally, a total of eighteen pages consisting of United States District

Court, Western District of Oklahoma - Probation Office Correspondence were withheld in their

entirety pursuant to §§ 522 (b)(2) "high," (b)(7)(C) and (b)(7)(F).  Summers Declaration ¶ 13.

In short, the BOP properly redacted and withheld protected information from the 29

pages of responsive materials located in response to Plaintiff's FOIA request.  The withheld

information consisted either of personal information of third parties, information that concerned

the personal safety of other individuals/inmates, and information that related solely to the

internal personnel rules and practices of the BOP.  Summers Declaration ¶¶ 22, 24-25.  As such,

and for the reasons set forth in Ms. Summers Declaration, the BOP's application of FOIA

exemptions (b)(7)(C), (b)(7)(F), an (b)(2) should be upheld.

### 6.     THE IRS HAS RELEASED ALL RESPONSIVE RECORDS TO PLAINTIFF AND PLAINTIFF'S CLAIM IS THEREFORE MOOT.

To prevail in a FOIA case, Plaintiff must show that an agency has:  (1) improperly;

(2) withheld; (3) agency records.  United States Dep't of Justice v. Tax Analysts, 492 U.S. at

136; United We Stand America, Inc. v. IRS, 359 F.3d 595, 598 (D.C. Cir.2004).  A suit is only

authorized under the FOIA against federal agencies and injunctive relief is only available to

remedy an agency's improper withholding of information.  Kissinger, 445 U.S. at 150; see also 5

U.S.C. § 552(a)(4)(B) & (f)(1). Once the requested records have been produced there is no

longer a case or controversy and the FOIA action becomes moot.  See Armstrong, 97 F.3d at

582; Trueblood, 943 F. Supp. at 67.

In the instant case, the IRS has conducted a search for records responsive to Plaintiff's

request.  No criminal records pertaining to Plaintiff were located.  Hines Declaration ¶ 5.

Personal income tax information pertaining to Mr. Sells was found for tax years 1980, 1984

through 1991, 1993, 1994, 2001, 2002, and 2003. <u>Id.</u> ¶¶ 7, 9. The personal income tax

information pertaining to Mr. Sells has now been disclosed. <u>See</u> Hines Declaration and attached

Exhibit 1 (Information to be disclosed to Plaintiff). Consequently, the IRS has conducted a

reasonable search for responsive records pertaining to Plaintiff, and all responsive records have

been produced to Plaintiff. There exists no justiciable case or controversy, and Plaintiff's claim

against the Defendant IRS should be dismissed as moot.

### 7.    THE FBI'S SEARCH REVEALED NO RESPONSIVE RECORDS.

Again, and as discussed above, <u>see</u> Parts D.3, and D.6, to prevail in a FOIA case, Plaintiff

must show that an agency has improperly withheld agency records. To obtain summary

judgment in its favor, the agency's burden is to establish that it has conducted a search

reasonably calculated to uncover all responsive records. <u>Oglesby</u>, 920 F.2d at 68. Agency

affidavits are accorded a presumption of good faith, which cannot be rebutted by purely

speculative claims about the absence and discoverability of documents. <u>SafeCard Servs., Inc.</u>,

926 F.2d at 1200. Mr. Hardy's declaration fully sets out, in a detailed and non-conclusory

manner, the FBI's reasonably conducted search for responsive records which resulted in a

finding of no responsive records. As such, dismissal or summary judgment is appropriate in its

favor. <u>Perry</u>, 684 F.2d at 127.

Specifically, the Hardy Declaration explains that the Central Records System ("CRS"),

which is utilized by the FBI to conduct searches in response to FOIA and Privacy Act requests,

enables it to maintain all information which it has acquired in the course of fulfilling its

mandated law enforcement responsibilities. The records maintained in the CRS consist of

administrative, applicant, criminal, personnel, and other files compiled for law enforcement

purposes. This system consists of a numerical sequence of files broken down according to

subject matter. The subject matter of a file may relate to an individual, organization, company,

publication, activity, or foreign intelligence matter. Certain records in the CRS are maintained at

FBIHQ. Records which are pertinent to specific field offices of the FBI are maintained in those

field offices. Hardy Decl. ¶ 13.

Access to the CRS is obtained through the General Indices, which are arranged in

alphabetical order. Hardy Dec. ¶15. The General Indices consist of index cards on various

subject matters that are searched either manually or through the automated indices. The entries

in the General Indices fall into two categories:

> (a) A "main" entry – A "main" entry, or "main" file, carries the
>     name corresponding with a subject of a file contained in the CRS.

> (b) A "reference" entry – "Reference" entries, sometimes called
>     "cross-references" are generally only a mere mention or reference
>     to an individual, organization, or other subject matter, contained
>     in a document located in another "main" file on a different subject
>     matter.

Id. Access to the CRS files in FBI field offices is also obtained through the General Indices

(automated and manual), which are likewise arranged in alphabetical order, and consist of an

index on various subjects, including the names of individuals and organizations. Id. Searches

made in the General Indices to locate records concerning a particular subject, such as Plaintiff

Shelby Sells, are made by searching the subject requested in the index. Id. FBI field offices

have automated indexing functions. Id.

On October 16, 1995, the Automated Case Support ("ACS") system was implemented for

all Field Offices, Legal Attaches ("Legats") and FBIHQ. Hardy Dec. ¶16. More than 105

million records were converted from automated systems previously utilized by the FBI. Id. The

ACS consists of three integrated, yet separately functional, automated applications that support

case management functions for all FBI investigative and administrative cases:

(a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign,

and close investigative and administrative cases as well as set, assign, and track leads.  The

Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a

case. The field offices that receive leads from the OO are referred to as Lead Offices

("LOs")-formerly known as Auxiliary Offices.  When a case is opened, it is assigned a Universal

Case File Number ("UCFN") which is utilized by all FBI field offices, Legats and FBIHQ, that

are conducting or assisting in the investigation.  Id.  Using a fictitious file number "111-HQ-

12345" as an example, an explanation of the UCFN is as follows:  "111" indicates the

classification for the specific type of investigation; "HQ" is the abbreviated form used for the

OO of the investigation, which in this case is FBIHQ; and "12345" denotes the individual case

file number for the particular investigation.

(b) Electronic Case File ("ECF") – ECF serves as the central electronic repository for

the FBI's official text-based documents.  ECF supports the universal serial concept, in that only

the creator of a document serializes it into a file.  This provides a single-source entry of serials

into the computerized ECF system.  All original serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by

providing a complete subject/case index to all investigative and administrative cases.  Only the

OO is required to index; however, the LOs may index additional information as needed.  UNI, an

index of approximately 92.8 million records, functions to index names to cases, and to search

names and cases for use in FBI investigations.  Names of individuals or organizations are

recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.  Hardy Decl. ¶ 16.

The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ.  Hardy Dec. ¶17.  The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval.  Id.  Without a "key"  (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved.  Id.  The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes.  Id.  Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Shelby Sells.  Id.

In response to Plaintiff's request, FBIHQ searched the CRS using Plaintiff's name in order to locate any main investigatory files maintained at HQ.  Hardy Dec. ¶18.  A search of the CRS by using the name "Shelby Wayne Sells" would cover a three-way phonetic breakdown of the name.  Id.  For example, this search would locate records using the phonetic sounds of each last and first name relating to the following names: "Sells, Shelby, Wayne"; "Sells, Shelby"; and "Sells, Shelby, W.".  Id.  FBIHQ also used Plaintiff's date of birth and Social Security number to facilitate the identification of responsive records.  Id.  This search failed to locate any main investigatory files responsive to Plaintiff's request.  Id.

-34-

In the absence of a specific request for a search for cross-references at the administrative level, the FBI's current policy is to identify only "main" files responsive to FOIPA requests. Hardy Dec. ¶19. In this case, at the administrative level, Plaintiff did not specifically request that a search be conducted for cross-references. Id. Nonetheless, upon receipt of the Complaint FBIHQ did conduct a search to locate cross-reference files responsive to this request. Id. This search identified three cross-reference files as potentially responsive to this request. Id. These files were identified as potentially responsive to Plaintiff's request because the subjects' names sounded like or were similar to Plaintiff's name. Id. As explained above, a search of the CRS using the name "Shelby Wayne Sells" would cover a three-way phonetic breakdown of the name; therefore, this means that this search would locate records using the phonetic sounds of each last and first name relating to the following names: "Sells, Shelby, Wayne"; "Sells, Shelby"; and "Sells, Shelby, W.". Id.

In order to make a definitive determination that a file is in fact about the subject of the request, FBIHQ reviews that file to locate identifying information, such as, the subject's date of birth, home address, or social security number. Hardy Dec. ¶20. In this case, three cross-reference files were identified by HQ as potentially responsive to Plaintiff's request. Id. The three files are FBI field office cross-reference files. Id. Accordingly, FBIHQ requested the pertinent field office to conduct a search to locate these files. Id. FBIHQ was subsequently advised by the FBI field office that the cross-reference files identified as originating in that office do not pertain to Plaintiff. Id. For these reasons, FBIHQ has determined that there are no cross-reference files that concern Plaintiff. Id.

Given these facts, the Court should find that the FBI's search was reasonable and

adequate.  The FBI carried its burden to show that it conducted a search reasonably calculated to uncover all responsive records.  See Weisberg, 745 F.2d at 1485; Perry, 684 F.2d at 126.  That is all that is required.  See Kuffel, 882 F. Supp. at 1120-21 (no jurisdiction exists over claims where agency conducted good faith, reasonable search and found no responsive documents). However, the search did not uncover any responsive documents.  The Court should find that the FBI's search was adequate and that responsive documents do not exist and dismiss the case against the FBI as there is no justiciable controversy.

# V.  **CONCLUSION**

As set forth above, the Defendants have responded properly to Plaintiff's requests and have

complied with their obligations under the Privacy Act and the FOIA.  Accordingly, the Court

should grant Defendant's motion for summary judgment, deny Plaintiff's motion for partial

summary judgment against Defendant DEA, and dismiss this case against the Defendants USMS,

DEA, Criminal Division, BOP, ATF, IRS, and FBI.

Dated:  April 6, 2006                    Respectfully submitted,


                                         /s/
                                         KENNETH L. WAINSTEIN
                                         D.C. Bar # 451058
                                         United States Attorney


                                         /s/
                                         Rudolph Contreras
                                         D.C. Bar # 434122
                                         Assistant United States Attorney


                                         /s/
                                         HEATHER R. PHILLIPS
                                         C.A. Bar # 19620
                                         Assistant United States Attorney
                                         Civil Division
                                         555 4th Street, N.W., Rm E4212
                                         Washington, DC 20530
                                         (202) 514-7139

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHELBY SELLS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Civil Action No. 06CV0077 (RJL)** |
| ) | |
| **EXECUTIVE OFFICE FOR UNITED** ) | |
| **STATES ATTORNEYS, ET. AL,** ) | |
| ) | |
| **Defendants** ) | |
| ) | |

## ORDER

Upon consideration of Defendants' motion for summary judgment, the opposition thereto, and the entire record herein, it is this _____ day of _____, hereby

ORDERED that the Defendants' motion is hereby GRANTED and this case is hereby DISMISSED.

_____
UNITED STATES DISTRICT JUDGE